IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DUBOIS LOGISTICS, LLC, | ) |
|     Plaintiff/Counterclaim Defendant, | ) ) ) CIVIL ACTION NO. 3:11-34 |
| v. | ) JUDGE KIM R. GIBSON |
| UNITED FOOD AND COMMERCIAL WORKERS UNION, LOCAL 23, | ) ) ) ) |
|     Defendant/Counterclaimant. | ) |

**MEMORANDUM AND ORDER OF COURT**

**I.   SYNOPSIS**

This matter comes before the Court on the cross-motions for summary judgment (Doc. Nos. 21, 26) filed by Defendant/Counterclaimant United Food and Commercial Workers Union, Local 23 ("Local 23") and Plaintiff/Counterclaim Defendant DubBois Logistics, LLC ("DuBois"). For the reasons that follow, the Court will **GRANT in part** and **DENY in part** Local 23's motion and **DENY** DuBois's motion.

**II.   JURISDICTION AND VENUE**

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337. Venue is proper under 28 U.S.C. § 1391(b) and 29 U.S.C. § 185(a).

**III.   BACKGROUND**

This case stems from a collective bargaining agreement ("CBA") dispute between DuBois, a company that operates a wholesale grocery distribution warehouse in DuBois, Pennsylvania, and Local 23, a labor organization that acts as the collective bargaining representative for employees at the warehouse. In February 2010, Local 23 filed grievances alleging that DuBois violated the CBA by scheduling full-time employees to fewer than forty

1

hours per week, and, as required by the dispute resolution provision of the CBA, the grievances were submitted to arbitration before Arbitrator Robert A. Creo (the "Aribtrator"). By Opinion and Award (the "Award"), the Arbitrator sustained the grievances. (See Doc. No. 1-2).

Thereafter, DuBois timely filed the instant action seeking to vacate the Award pursuant to § 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185 *et seq*. (See Doc. No. 1). Local 23 responded by filing its Answer and Counterclaim (Doc. No. 8) requesting that the Court enforce the Award and require DuBois to pay Local 23's attorney's fees and costs. The parties filed cross-motions for summary judgment (Doc. Nos. 21, 26), concise statements of material fact in support of their motions (Doc. Nos. 22, 27), responses to the concise statements of material fact (Doc. Nos. 30, 32), and supporting briefs (Doc. Nos. 24, 28, 29, and 31).

From the parties' filings it is evident that the material facts in this case are undisputed. On or about February 1, 2010, DuBois took over the operation of a warehouse previously owned and operated by the Penn Traffic Company ("Penn Traffic"). (Doc. No. 27 at ¶ 5; Doc. No. 30 at ¶ 5). Pursuant to the CBA grievance procedure, Local 23 subsequently filed grievances alleging that DuBois violated Article 17.4 of the CBA, which states in pertinent part that "[f]orty (40) hours, five (5) eight (8) hour days, shall constitute the regular work week for full time employees." (Doc. No. 27 at ¶ 6; Doc. No. 30 at ¶ 6).[1] A hearing was held before the Arbitrator on September 2, 2010, and by Award dated December 23, 2010, the Arbitrator sustained Local 23's grievances and ordered DuBois to: (1) make whole for any lost wages employees who were sent home early after being scheduled for forty hours in a week; and (2) cease and desist from

---

[1] Article 17.4 provides in its entirety:

> Forty (40) hours, five (5) eight (8) hour days, shall constitute the regular workweek for fulltime employees. All time worked in excess of eight (8) hours per day or forty (40) hours per week by any employee will be paid for at the rate of time and one-half.

(Doc. No. 22 at ¶ 4; Doc. No. 32 at ¶ 4).

2

ending early a shift of full-time employees so that they work fewer than forty hours per week. (Doc. No. 27 at ¶¶ 7-11; Doc. No. 30 at ¶¶ 7-11; Doc. No. 1-2 at 20).

The parties do not agree, however, on the central issues in this case: (1) whether the Arbitrator appropriately interpreted the CBA; and (2) whether Local 23 is entitled to attorney's fees and costs.

## IV. STANDARD OF REVIEW

"Summary judgment is appropriate only where, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact . . . and the moving party is entitled to judgment as a matter of law." *Melrose, Inc. v. Pittsburgh*, 613 F.3d 380, 387 (3d Cir. 2010) (quoting *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 380 n.6 (3d Cir. 2007)); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56 (a).[2] Issues of fact are genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); see also *McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005). Material facts are those which will affect the outcome of the trial under governing law. *Anderson*, 477 U.S. at 248.

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party meets this burden, the party opposing summary judgment "may not rest upon the mere allegations or denials of the . . . pleading," but "must set forth specific facts showing that there is a genuine issue for trial." *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001) (internal citations omitted); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); see also *Podobnik v. U.S. Postal Serv.*, 409

---

[2] Rule 56 was revised in 2010. The standard previously set forth in subsection (c) is now codified as subsection (a). The language of this subsection is unchanged, except for "one word—genuine 'issue' bec[ame] genuine 'dispute.'" Fed. R. Civ. P. 56 advisory committee's note, 2010 amend.

3

F.3d 584, 594 (3d Cir. 2005) (noting that a party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted).

Instantly, the parties have filed cross-motions for summary judgment. As the United States Court of Appeals for the Third Circuit has explained, "[c]ross-motions are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist." *Lawrence v. City of Philadelphia*, 527 F.3d 299, 310 (3d Cir. 2008) (quoting *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968)). Instead, "[e]ach movant must show that no genuine issue of material fact exists; if both parties fail to carry their respective burdens, the court must deny the motions." *Piazza v. CT Corp*, Civ. A. No. 3:09-cv-1087, 2011 U.S. Dist. LEXIS 109528, *11 (M.D. Pa. Sept. 26, 2011) (citing *Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1023 (3d Cir. 2008)).

## V. DISCUSSION

The parties disagree as to whether the Award should be vacated and whether attorney's fees are warranted. The Court will address these issues *seriatum*.

### A. Vacating an Arbitration Award

DuBois contends that the Court should vacate the Award while Local 23 argues that the Court should enforce it.

As this Court recently explained, the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, codifies Congress's desire to uphold private arbitration agreements that produce prompt and fair dispute resolution without court intervention. *Am. Red Cross Blood Servs. v. Commc'ns Workers*

4

*of Am.*, Civ. A. No. 3:10-234, 2011 U.S. Dist. LEXIS 151379, *5-6 (W.D. Pa. Oct. 11, 2011) (quoting *Brentwood Med. Assocs. v. United Mine Workers of Am.*, 396 F.3d 237, 238-39 (3d Cir. 2005)). Accordingly, the scope of judicial review of a labor arbitrator's decision is "exceedingly narrow," *Armstrong Cnty. Mem. Hosp. v. USW Local 158-06*, 419 F. App'x 217, 221 (3d Cir. 2011) (quoting *Kane Gas Light & Heating Co. v. Int'l Bhd. of Firemen, Local 112*, 687 F.2d 673, 675 (3d Cir. 1982)), and "extremely deferential." *Southco, Inc. v. Reell Precision Mfg. Corp.*, 331 F. App'x 925, 928 (3d Cir. 2009) (quoting *Dluhos v. Strasberg*, 321 F.3d 365, 370 (3d Cir. 2003)). A reviewing court may determine only whether or not the arbitrator's award "draws its essence" from the parties' collective bargaining agreement. *Brentwood*, 396 F.3d at 240 (quoting *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36 (1987)); *Armstrong*, 419 F. App'x at 221 ("courts may set aside an arbitrator's award only in the rare instance when the award does not draw its essence from the contract and . . . simply reflects the arbitrator's own notions of industrial justice") (citations and quotation marks omitted).

An arbitration award "draws its essence from a collective bargaining agreement if its interpretation can *in any rational way* be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention." *Brentwood*, 396 F.3d at 241 (citing *United Transp. Union Local 1589 v. Suburban Transit Corp.*, 51 F.3d 376, 379-80 (3d Cir. 1995) (original emphasis). Thus, courts must enforce an arbitration award if it was based on an arguable interpretation and/or application of the collective bargaining agreement, and may only vacate it if: (1) there is no support in the record for its determination; or (2) it reflects manifest disregard of the agreement, totally unsupported by principles of contract construction. *Brentwood*, 396 F.3d at 241 (quoting *Exxon Shipping Co. v. Exxon Seamen's Union*, 993 F.2d 357, 360 (3d Cir. 1993)); see also *Major League Umpires Ass'n v. Am. League of Prof'l Baseball*

5

*Clubs*, 357 F.3d 272, 280 (3d Cir. 2004) ("[A]n award may be vacated if the arbitrator demonstrates manifest disregard for the CBA[,]" which is "established when the arbitrator's award is totally unsupported by principles of contract construction.") (citations and quotation marks omitted). "Once a court is satisfied that an arbitrator's award draws its essence from a collective bargaining agreement, it is without justification to further consider the award." *Brentwood*, 396 F.3d at 241.

With this understanding, the Court will address whether the Award draws its essence from the CBA.

### 1. Award

In the Award, the Arbitrator provides an extensive summary of: (1) the testimony and other evidence presented at the arbitration hearing; (2) the arguments advanced by Local 23 and DuBois; and (3) the relevant provisions of the CBA and the "Penn Traffic CBA" (the prior collective bargaining agreement between Local 23 and Penn Traffic, the previous operator of the warehouse). (See Doc. No. 1-2 at 3-20). The Arbitrator frames the issue presented as follows:

> Does Article 17.4 of the Collective Bargaining Agreement between the parties, which provides for a "regular workweek," guarantee employees at least 40 hours of work per week? If yes, what shall the remedy be?

(*Id.* at 20). Article 17.4 states in pertinent part that "[f]orty (40) hours, five (5) eight (8) hour days, shall constitute the regular work week for full time employees." (Doc. No. 27 at ¶ 6; Doc. No. 30 at ¶ 6).

Ultimately the Arbitrator: (1) concludes that the provision is "properly interpreted and applied as meaning that the workweek of full-time employees consists of 40 hours[,]" (Doc. No. 1-2 at 21); and (2) grants Local 23's grievance, ordering DuBois to "cease and desist from ending early a shift of full time employees so that they work less than 40 hours per week." (*Id.* at 22). In support of his interpretation of the CBA, the Arbitrator notes that while there is no

6

explicit guarantee of forty hours of work for full-time employees, it is implicitly guaranteed because the express language of Article 17.4 states that the workweek of full-time employees "is 40 hours over five days of eight hours each." (*Id.* at 21). As further support of this implicit guarantee, the Arbitrator notes that "modifications were made [to the CBA] to permit 4 calendar days of 10 hour shifts[.]" (*Id.*). Additionally, the Arbitrator concludes that "the entire contract, including holiday and vacation provisions, when read as a whole" supports the interpretation that full-time employees are guaranteed at least forty hours per week. (*Id.*).[3]

Apart from the language of the CBA, the Arbitrator also considers the context surrounding its formation and other indicia of the parties' intent. Specifically, the Arbitrator notes that: (1) the terms and conditions of the previous Penn Traffic CBA "continue except where expressly modified by the parties"; (2) Article 18.5 of the Penn Traffic CBA (which is identical to Article 17.4 of the current CBA) was interpreted and applied as guaranteeing a forty-hour work week; and (3) "no express understanding was reached [by Local 23 and DuBois] . . . to redefine the work week as being less than the traditional 40 hours that existed" at the warehouse under the Penn Traffic CBA. (*Id.*). The Arbitrator also credits testimony presented by Local 23 that it "never agreed to any contractual modifications to change the fact that full-time employees were scheduled and worked 40 hours each week" as consistent with the way Local 23 presented the terms of the new CBA to its own membership. (*Id.*).

---

[3] The Arbitrator is presumably referring to Articles 22 and 23 of the Penn Traffic CBA, the text of which he includes in the Award. (See Doc. No. 1-2 at 12-13). Article 22.1 provides in part that "all full-time employees shall work a thirty-two (32) hour work week, and are to receive eight (8) hours straight time holiday pay in addition" in weeks which include a recognized holiday, and Article 23.2 provides in relevant part that "[f]ull-time employees' vacation pay shall be based on the regular hourly rate before premiums or overtime, for their job classification and for *a regular forty hour work week.* (*Id.*) (emphasis added). As discussed *infra*, the terms of the Penn Traffic CBA apply to the instant CBA unless expressly modified by the parties.

7

## 2. Draws its Essence

As discussed supra, this Court is limited in its scope of review and may determine only whether or not the Award "draws its essence" from the CBA. The Award draws its essence from the CBA if "its interpretation can *in any rational way* be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention." *Brentwood*, 396 F.3d at 241. Instantly, the Court concludes that this low threshold is met. The Arbitrator rationally interpreted ambiguous language of the CBA by concluding that a provision stating that the workweek for full-time employees consists of forty hours required DuBois to schedule those employees for at least forty hours. The Arbitrator based his interpretation on the express language of the CBA, considered the CBA as a whole, and found further support for his interpretation in other indicia of the parties' intention (the bargaining history and the prior Penn Traffic CBA). The Court, therefore, must enforce the award because it is based on an arguable interpretation and/or application of the CBA. See *id.*

In its filings, DuBois advances numerous arguments in an effort to convince the Court that this case presents one of the rare instances where vacatur is warranted.[4] But these arguments amount to a claim that the Arbitrator misinterpreted the CBA, and this Court must "resist the urge to conduct *de novo* review of the award on the merits." *Id.*; see also *United Paperworkers Union*, 484 U.S. at 36 (stating that courts "are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or *on misinterpretation of the contract*") (emphasis added); *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509, (2001) (*per curiam*) (stating that "if an arbitrator is even arguably construing or

---

[4] In particular, DuBois contends that the Arbitrator's interpretation of the term "regular workweek": (1) is inconsistent with a CBA provision providing DuBois the right "to schedule and assign work to employees" as well a provision providing that "[n]o warehouse employee will be called out for less than a four (4) hour shift"; (2) ignores the removal of a provision from the Penn Traffic CBA which guaranteed "continual eight hour shifts"; and (3) effectively re-writes the CBA. (See Doc. No. 28 at 8-18). While DuBois "may take issue" with the Arbitrator's interpretation, "this is not sufficient to justify vacatur of the award by this Court." *Brentwood*, 396 F.3d at 243.

8

applying the contract and acting within the scope of his authority, the fact that a court is convinced he committed serious error does not suffice to overturn his decision") (internal quotations omitted). Whether the Arbitrator's decision was the best interpretation of an ambiguous provision of the CBA is not for this Court to decide, but the Court is satisfied that that Award is not "totally unsupported by principles of contract construction." *Major League Umpires Ass'n*, 357 F.3d at 280.

Although DuBois is dissatisfied with how the Arbitrator interpreted the CBA, DuBois got exactly what it bargained for when it agreed to arbitrate CBA disputes: an arbitrator who would first provide an interpretation of the CBA that was rationally based on the language of the agreement, and second would produce a rational award. See *Brentwood*, 396 F.3d at 242. This Court is not empowered to overturn the Arbitrator's rational interpretation of the CBA; therefore, the Court will enforce the arbitration award.

### B.  Attorney's Fees in Action to Vacate Arbitration Award

Local 23 also contends that the Court should enter summary judgment in its favor on its Counterclaim and compel DuBois to pay Local 23's attorney's fees and costs.

"[A]ttorney's fees in a suit to vacate an arbitration award may be granted if the party seeking vacatur acted without justification or had no 'reasonable chance to prevail[.]'" *Dauphin Precision Tool, LLC v. United Steel Workers of Am., Local Union 1688-13*, Civ. A. No. 1:06-CV-2262, 2008 U.S. Dist. LEXIS 39069, *1-2 (M.D. Pa. May 14, 2008) (citing *Chauffeurs, Teamsters, & Helpers Local Union No. 765 v. Stroehmann Bros.*, 625 F.2d 1092, 1094 (3d Cir. 1980); *Teamsters Local No. 764 v. J.H. Merritt & Co.*, 770 F.2d 40, 43 n.2 (3d Cir. 1985)); see also *Wilkes Barre Hosp. Co. v. Wyo. Valley Nurses Ass'n Pasnap*, Nos. 11-1134 & 11-1225, 2011 U.S. App. LEXIS 24036, *7-8 (3d Cir. 2011) (stating that "fees are generally awarded if

9

the defaulting party acted without justification, or if the party resisting arbitration did not have a reasonable chance to prevail") (citations and quotation marks omitted). A party may justifiably challenge an arbitration award by presenting a legitimate argument that the arbitrator unreasonably interpreted ambiguous contractual language. See *Dauphin Precision*, 2008 U.S. Dist. LEXIS 39069 at *2; see also *Total Warehouse Servs. Corp. v. Int'l Bhd. of Teamsters, Local 830*, Civ. A. No. 93-CV-6260, 1994 U.S. Dist. LEXIS 5610, *3 n.2 (E.D. Pa. May 2, 1994) (refusing to award attorney fees because "there [was] a legitimate argument as to whether the arbitrator properly followed the . . . agreement").

Furthermore, while each party normally must bear the burden of its own legal expenses—including attorney's fees—one of the narrow exceptions to this rule is a finding that the losing party litigated in bad faith, vexatiously, or for oppressive reasons. *Wilkes Barre Hosp.*, 2011 U.S. App. LEXIS 24036 at *8 (quoting *Mobil Oil Corp. v. Indep. Oil Workers Union*, 679 F.2d 299, 305 (3d Cir. 1982)). In determining whether a party has brought an action for vacatur in bad faith, the Third Circuit has considered whether: (1) the party acted promptly to effect a vacation of an arbitration award, thus demonstrating the good faith belief in the arguments it advanced; (2) the party has a history of refusing to comply with arbitration awards; and (3) the party has presented a substantial legal issue. *Chamberlain Mfg. Co. v. Local Lodge No. 847 of the Int'l Ass'n of Machinists & Aero. Workers*, 474 F. Supp. 2d 682, 694 (M.D. Pa. 2007) (quoting *Mobil Oil*, 679 F.2d at 305); *Banner Metals v. United Steelworkers*, Civ. A. No. 91-1450, 1992 U.S. Dist. LEXIS 22199, *9-10 (M.D. Pa. June 18, 1992) (quoting same).

The Court concludes that attorney's fees and costs are not warranted in this case. Local 23 cannot establish that DuBois filed this action without justification because DuBois presented a legitimate challenge to the Arbitrator's interpretation of the CBA. Additionally, Local 23 has

not established that DuBois litigated in bad faith, vexatiously, or for oppressive reasons because: (1) DuBois promptly filed this action just over a month after the Arbitrator issued the award; (2) Local 23 presented no evidence indicating that DuBois has a history of noncompliance with such awards; and (3) DuBois presented a substantial legal issue regarding the proper interpretation of the CBA. Therefore, the Court will not award Local 23 attorney's costs and fees.

## VI. CONCLUSION

The Award draws its essence from the parties' CBA because the Arbitrator's interpretation of the "regular workweek" provision is rationally based on the language of the CBA, the context surrounding it, and other indicia of the parties' intention. Additionally, while DuBois did not ultimately prevail on its challenge to the Arbitrator's interpretation, the Court concludes that it did not litigate this case in bad faith or initiate the action without justification. Accordingly, the Court will enforce the arbitration award and deny Local 23's request for attorney's fees and costs. An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DUBOIS LOGISTICS, LLC, ) | |
| ) | |
| Plaintiff/Counterclaim Defendant, ) | |
| ) | CIVIL ACTION NO. 3:11-34 |
| v. ) | JUDGE KIM R. GIBSON |
| ) | |
| UNITED FOOD AND COMMERCIAL ) | |
| WORKERS UNION, LOCAL 23, ) | |
| ) | |
| Defendant/Counterclaimant. ) | |

## ORDER

**AND NOW**, this 2nd day of March 2012, in accordance with the Memorandum, **IT IS HEREBY ORDERED** that Motion for Summary Judgment (Doc. No. 26) filed by Plaintiff/Counterclaim Defendant Dubois Logistics, LLC ("DuBois") seeking vacatur of the arbitration award is **DENIED** and the Motion for Summary Judgment (Doc. No. 21) filed by Defendant/Counterclaimant United Food and Commercial Workers Union, Local 23 ("Local 23") is **GRANTED in part** and **DENIED in part**. Specifically, the Court denies Local 23's request for attorney's fees and costs, but enforces the arbitration award by granting summary judgment in its favor on DuBois's claim for vacatur.

**IT IS HEREBY ORDERED** that judgment be entered in favor of Local 23 and against DuBois on DuBois's claim, and that judgment be entered in favor of DuBois and against Local 23 on Local 23's counterclaim seeking attorney's fees and costs.

**IT IS FURTHER ORDERED** that the Clerk of Court is directed to **CLOSE** this case.

BY THE COURT:

*/s/ Kim R. Gibson*

**KIM R. GIBSON,**
**UNITED STATES DISTRICT JUDGE**